UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| JON Q. WRIGHT and JQ LICENSING, LLC | Case No.: |
| Plaintiffs, | |
| v. | COMPLAINT FOR COPYRIGHT INFRINGEMENT |
| ETJJP Inc. d/b/a Cyrus Resort | |
| Defendant. | |

---

## COMPLAINT

Plaintiffs Jon Q. Wright ("JQW") and JQ Licensing, LLC (collectively, the "Plaintiffs"), by and through their undersigned attorney, hereby pray to this honorable Court for relief based on the following:

## INTRODUCTION

1. This action arises from Defendants' willful copyright infringement of Plaintiffs' copyrighted and valuable illustration. Plaintiffs seek to obtain injunctive relief against Defendant ETJJP Inc. d/b/a Cyrus Resort ("Cyrus Resort") to stop their continuing infringement and prevent any further unlawful infringement of Plaintiffs' artwork. Cyrus Resort's repeated infringement has damaged Plaintiffs' business and threatens to damage it further. Plaintiffs seek injunctive relief, declaratory relief, and damages for the full amount of Plaintiffs' losses, as well as

1

Defendants' profits, or if elected, statutory damages, as well as attorneys' fees, and costs pursuant to 17 U.S.C. §§ 504(c) and 505.

## THE PARTIES

2. Plaintiff Jon Q. Wright is an individual domiciled and residing in the State of Montana.

3. Wright is a member of JQ Licensing LLC, a limited liability company duly formed under the laws of the State of Minnesota and registered in the State of Montana as a foreign limited liability company (hereafter, "JQ Licensing"). Wright licenses his artwork exclusively through JQ Licensing.

4. Defendant ETJJP Inc. d/b/a Cyrus Resort is a corporation formed and existing under the laws of the State of Minnesota, with a principal place of business in Baudette, Minnesota.

## JURISDICTION AND VENUE

5. This is an action for copyright infringement arising under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.* as amended).

6. This Court has subject matter jurisdiction over Plaintiffs' copyright infringement claims under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.* as amended) and 28 U.S.C. §§ 1331 and 1338.

7. Venue is proper in this district under 28 U.S.C. §§ 1391 and 1440 in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred and the judicial district wherein the Defendants can be found.

**PLAINTIFFS' WORK OF ART**

8. In 1993, JQW authored Walleye Green Lure (the "Subject Work"), which consists of a highly detailed depiction of a walleye fish, out of the water and chasing after a green and yellow lure. An image of Walleye Green Lure is shown below:



9. JQW registered the Subject Work with the U.S. Copyright Office under Registration No. VAu 1-021-822, as a collection of illustrations of different species of fish, all authored by JQW. This registration, entitled "JQ Fish Art," has an effective date of July 10, 2009. A copy of the JQ Fish Art registration certificate is annexed hereto as **Exhibit A**.

10. JQW's practice of creating highly detailed and unique wildlife illustrations is an extraordinarily time-consuming process, involving a dizzying multiplicity of steps.

11. In order to create his detailed fish illustrations, including the Subject Work, JQW first faces the laborious task of catching a trophy-sized specimen of the subject fish.

12. Once a trophy fish is caught, JQW takes detailed photographs of the fish, freezes, and then partially thaws the fish in order to mold the body into the desired position. He then impales the

fish with numerous stakes to preserve the particular and desired pose, then captures a 360° perspective of the manipulated through a series of photographs.

13. Only then does JQW begin the sketching process, referring to the photographs as reference material.

14. JQW then takes numerous artistic liberties with certain aspects of each fish. He expresses elements of each fish in a manner that is creative and unique to his style and artistic abilities.

15. With respect to the Subject Work, JQW has taken creative license with certain body parts, including but not limited to, body and tail length to depict the fish "in action," jumping from the water, and to otherwise give the viewer the impression that the fish is "trophy sized" by creatively manipulating the size, shape, and direction of anatomical features in ways which are not possible to fish in nature.

16. JQW's artwork has been painstakingly created, with each minute original detail being depicted with precision.

17. JQW estimates that he has spent hundreds of hours painting a single one of his fish illustrations, touching each individual painted fish scale with a paintbrush between three and five times.

18. In creating and expression of a walleye that is visually exciting to the viewer, JQW has effectually created a walleye that is comprised of design elements and other creative features that do not exist in nature.

19. JQW artwork is very valuable, as there are not many artists painting freshwater fish, and even fewer creating works with the type of detail employed by JQW.

20. Because of JQW's unique talents, painstaking attention to detail, and unique expression of fish of all species, his artwork is highly pursued.

21. JQW's success as a wildlife illustrator, and by implication the value of his artwork, is dependent on experience, patience, and dedication, and each of his paintings is built on his talent and 40 years of expertise.

## CYRUS RESORT'S INFRINGING CONDUCT

22. Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

23. Cyrus Resort is a fishing and vacation resort, offering cabins, guided fishing services, and other amenities.

24. In order to promote, advertise, or otherwise market Cyrus Resort's business, Cyrus Resort designed, created, copied, reproduced, distributed, displayed, or otherwise commercially exploited the Subject Work as part of their business logo (the "Infringing Logo").

25. Directly below is an exemplar of the Infringing Logo, followed by a magnified copy of the relevant portion of the Infringing Logo:





26. A side-by-side comparison of the Subject Work (left) and the walleye within Infringing Logo (right) demonstrates that the walleye in the Infringing Logo unlawfully copies JQW's protectable elements of expression contained in the Subject Work:

 

27. Directly below, the Subject Work was set to 50% opacity and then superimposed over the walleye within the Infringing Logo so that the creative features of both walleyes are visible:



28. The visual comparisons above demonstrate unlawful copying of protectible and highly specific elements of expression, including, but not limited to the a) placement and positioning of the fins, tail, and other anatomical features b) the proportions of the anatomical features, relative to one another; c) the position and curvature of the body of the walleye; d) the mouth opening size and position; e) positioning, size, shape, and placement of the gills; e) positioning, size, shape, and placement of the gill plate; f) placement, size, and depth of shading across the entire underside of the walleye; and g) many of the exact same hand drawn/painted lines; h) other particularized expressions of anatomical features that are not anatomically possible in a real life walleye.

29. Directly below is a side-by-side comparison of the relevant portions of the Subject Work and the Infringing Logo, as well as an overlay of the two, demonstrating the copying of hand drawn/painted lines, including the number, curvature, direction, and placement of lines within the gills and gill plate:



30.     As demonstrated above, the walleye within the Infringing Logo contains a virtually exact copy of the walleye of the Subject Work.

31.     As demonstrated above, the walleye within the Infringing Logo is essentially a traced copy of the walleye of the Subject Work, and upon information and belief, accomplished through image editing software.

32.     Upon information and belief, image editing software was used to remove or alter fine details of the Subject Work as the intricate details of the Subject Work be difficult or costly to reproduce on merchandise and other physical items.

33.     Cyrus Resort reproduced, distributed, displayed, or otherwise commercially exploited the Infringing Logo across a wide variety of media and channels, including, but not limited to, (a) their own website, (b) marketing materials, e.g., flyers and advertisements, for events hosted on their premises, (c) physical signage affixed to stand alone buildings throughout their premises, (d) t-shirts, hats and other merchandise, and (e) physical signage affixed to fishing boats and other vehicles owned by Cyrus Resort.

34.     The allegations herein are made as to all material, products, photographs, advertisements, etc., that Cyrus Resort used, created, copied, marketed, displayed, distributed, or sold that incorporate the Infringing Logo and the images and comparisons depicted herein are only exemplars.

35.     Cyrus Resort's infringing conduct was undertaken to reap the creative and artistic benefit and value of the Subject Work.

36.     Despite notice of Plaintiffs' copyrights to the Subject Work, and the infringing nature of the Infringing Logo, Cyrus Resort continues to display photographs and other images with the Infringing Logo, including, but not limited to, on its own website and social media accounts.

37. Cyrus Resort willfully misappropriated and commercially exploited the Subject Work, with blatant and reckless disregard for JQW's rights in and to the Subject Work, by failing to ensure its use of the same was proper.

38. Cyrus Resort's continuing acts of infringement amount to a blatant and reckless disregard for JQW's rights in and to the Subject Work.

39. As a result of Cyrus Resort's infringement of JQW's copyrights in and to the Subject Work, JQW has suffered significant damage. Specifically, JQW has lost royalties and licensing revenue and have suffered dilution and diminishment of the value of the Subject Work.

## COUNT I
### (COPYRIGHT INFRINGEMENT – 17 U.S.C. §101, *et seq.*)

40. Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

41. JQW is the sole owner of the Subject Work and holds a valid copyright registration in accordance with the United State Copyright Act.

42. The Subject Work is copyrightable subject matter under 17 U.S.C. §102(a).

43. JQW has complied in all respects with the provisions and requirements of the Copyright Act.

44. Prior to the acts complained of herein, JQW duly registered the copyrights in and to the Subject Work with the United States Copyright Office.

45. JQW has exclusive rights under 17 U.S.C. §106 to reproduce, prepare derivative works of, distribute copies of, and publicly display the Subject Works.

46. Access is established by the striking similarity and/or identicality between the walleye within the Subject Work and the walleye within the Infringing Logo, precluding any possibility of independent creation.

47. As detailed *supra*., the walleye within the Infringing Logo is identical or virtually identical to the walleye within the Subject Work.

48. The Infringing Logo copy all or virtually all protectable elements of expression unique to JQW's artistic style, as well as his creative and particular expressions of a walleye fish, as described herein.

49. The Subject Work, including the walleye featured therein, is also the by-product of JQW's creative and original selection, coordination, and arrangement of elements.

50. Defendant has infringed Plaintiffs' rights by copying the Subject Work and subsequently creating, making and/or developing directly infringing works and/or derivative works featuring the Subject Work.

51. Defendant has infringed Plaintiffs' rights by copying the creative and original selection, coordination, and arrangement of elements.

52. Defendant was directly involved in the reproduction, distribution, display, adaptation, and/or creation of a derivative work, using the Subject Work.

53. Due to Defendant's acts of copyright infringement as alleged herein, Plaintiffs have suffered damages in an amount to be established at trial, including without limitation lost profits, royalties, and a diminution in the value of the misappropriated works.

54. As a result of the acts of infringement complained of herein, Defendant received revenues they would not have otherwise received, added brand value, and sales and profits it would not have otherwise received.

55. Due to Defendant's acts of copyright infringement as alleged herein, Defendant has obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Work. As such, Plaintiffs are entitled to disgorgement of Defendant's

profits directly and indirectly attributable to Defendant's infringement of Plaintiffs' rights in the Subject Work, in an amount to be established at trial.

56. Defendant has committed copyright infringement with actual or constructive knowledge of Plaintiffs' rights such that said acts of copyright infringement were willful, reckless, malicious, and in blatant disregard of Plaintiffs' rights. Such willfulness provides the basis on which Plaintiff seeks additional forms of relief.

57. In the alternative, Plaintiffs claim statutory damages under 17 U.S.C. §504(c)(1) for Defendant's negligent unauthorized use and copyright infringement.

58. Plaintiffs claim all damages and remedies available under 17 U.S.C. §§504 and 505.

## COUNT II
## (SECONDARY LIABILITY)

59. Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

60. To the extent that the Infringing Logo was created by a presently unknown third party, Cyrus Resort is vicariously liable for the direct infringement alleged herein because Defendants had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct.

61. Cyrus Resort has full control over, and final decision-making authority over how the business is marketed, including the design features of their logo, as well as the content of their marketing, advertising, and promotional materials used in connection with their business, including the Infringing Logo.

62. Cyrus Resort maintains a right and practical ability to stop or limit the direct infringement of any presently unknown third parties, yet declined to do so, namely that Cyrus Resort (a) had the ability to review, approve, decline, or otherwise supervise the creation of marketing, advertising,

and promotional material created for Defendants, including but not limited to the Infringing Logo; (b) had the ability to review, approve, decline, or otherwise supervise the commercial exploitation of the Infringing Logo; and/or (b) controlled their website and social media pages and had the practical ability to publish and remove content, including material containing the Infringing Logo and photographs and videos of the same.

63. By commercially exploiting the Infringing Logo, Cyrus Resort failed to exercise their right and ability to stop or limit infringing behavior.

64. Cyrus Resort failed to perform any due diligence concerning the Infringing Logo, whether the Subject Work was available for commercial exploitation, whether the Infringing Logo was created with a license from Plaintiffs, and whether a license is required to use the Infringing Logo.

65. Defendants had an obvious and direct financial interest in the unlicensed copying, reproduction, distribution, display, and exploitation of the Infringing Logo as it was used to promote, market, and advertise Cyrus Resort and their businesses, draw relevant individuals to their business, and generate revenue from the sale of their services.

66. The Subject Work, and consequently the Infringing Logo as a whole, serves as a "draw" for Cyrus Resort and its business as the Infringing Logo is used to attract the attention of consumers.

67. Due to Defendant's acts of copyright infringement as alleged herein, Defendant has obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Work. As such, Plaintiffs are entitled to disgorgement of Defendant's profits directly and indirectly attributable to Defendant's infringement of Plaintiffs' rights in the Subject Work, in an amount to be established at trial.

68. Defendant has committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious, which further subjects Defendant to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000.00) per infringement. Within the time permitted by law, Plaintiffs will make their election between actual damages and statutory damages.

69. In the alternative, Plaintiffs claim statutory damages under 17 U.S.C. §504(c)(1) for Defendant's negligent unauthorized use and copyright infringement.

70. Plaintiffs claim all damages and remedies available under 17 U.S.C. §§504 and 505.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests judgment against Defendant, as follows:

A. that the Court enter judgment against Defendant setting forth that Defendant has willfully infringed Plaintiffs' federally registered copyrights to the Subject Work as contemplated by 17 U.S.C. §504(c)(2);

B. alternatively, that the Court enter judgment against Defendant setting forth that Defendant has infringed Plaintiffs' federally registered copyright to the Subject Work, pursuant to 17 U.S.C. § 501;

C. that Defendant, and their respective agents, officers and servants be enjoined from importing, manufacturing, distributing, displaying, offering for sale, selling or otherwise trafficking in any materials that infringe Plaintiffs' copyrights in and to Subject Work;

D. impounding all unauthorized material that bears infringing copies of Plaintiffs' copyrighted artwork in the possession or control of Defendant pursuant to 17 U.S.C. §503(a)(1)(A), and ordering destruction of all unauthorized material bearing the Subject Work, pursuant to 17 U.S.C. §503(b);

E.    that Plaintiffs be awarded all profits of Defendant's plus all losses of Plaintiffs, the exact sum to be proven at the time of trial, or, if elected before final judgment, statutory damages for willful infringement as available under 17 U.S.C. § 504(c);

F.    that Plaintiffs be awarded their attorneys' fees as available under 17 U.S.C. § 504(c) or other applicable statute;

G.    that Plaintiffs be awarded pre- and post-judgment interest as allowed by law;

H.    that Plaintiffs be awarded the costs of this action; and

I.    that Plaintiffs be awarded such further legal and equitable relief as the Court deems proper.

PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE PURSUANT TO FED. R. CIV. P. 38 AND THE 7TH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Respectfully submitted,

Date:   October 11, 2024

/s/ Nathan M. Hansen
Nathan M. Hansen
Attorney At Law
P.O. Box 575
Willernie, MN 55090
MN Attorney Reg. No. 0328017
651-704-9600
Nathan@hansenlawoffice.com

Dmitry Lapin, Esq.
Axenfeld Law Group, LLC
2001 Market Street Suite 2500
Philadelphia, PA 19103
dmitry@axenfeldlaw.com
917-979-4570
*pro hac vice admission forthcoming*

*Attorneys for Plaintiffs*